JEHU P. COOPER, ADMINISTRATOR OF LESSIE MADISON, DECEASED, PLAINTIFF IN ERROR, v. THE SHORE ELECTRIC COMPANY AND THE NEW YORK AND NEW JERSEY TELEPHONE COMPANY, DEFENDANTS IN ERROR.

Submitted July 12, 1899—Decided November 20, 1899.

In an action brought under the act entitled "An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default" (*Gen. Stat.*, p. 1188)—*Held*—

1. That the statute gave a new cause of action, to be prosecuted in the name of the personal representatives of the deceased for the benefit of his widow and next of kin—a cause of action beyond that which the deceased would have had if he had survived, and based on different principles.

2. The controlling feature of this legislation is that damages are made recoverable for causing death as a compensation for the pecuniary injury the designated beneficiaries sustain by reason of the death. If there be no widow or next of kin at the time of the death of the deceased, the pecuniary injury contemplated by the statute does not exist and the action cannot be maintained.

3. The pecuniary injury to be compensated for is that of the widow or persons who are next of kin at the time of the death of the deceased, and the cause of action created by the statute enures to such person or persons as a vested right.

4. The right to compensation being vested in the beneficiary immediately upon the death of the deceased, by the death of such beneficiary pending the suit, there is neither an abatement of the action in the common law sense nor is the cause of action to be compensated for discharged. But the damages recoverable in such a case will be limited in duration and extent to the lifetime of the beneficiary.

This was an action brought by the plaintiff as administrator of the deceased for causing the death of Lessie Madison by the negligent and careless conduct and management by the defendants and their employes of the defendants' telephone and electric light wires, whereby the deceased received an electric shock from the effects of which she died. The action was brought in virtue of an act entitled "An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default," approved

March 3d, 1848. *Gen. Stat., p.* 1188. The suit was for the benefit of the father of the deceased, Peter Hunley, who was her next of kin. Pending the suit the father died intestate, leaving the mother, brothers and sisters of the decedent surviving. At the close of the testimony on the part of the plaintiff counsel of the defendants moved for a nonsuit, which motion was granted on the ground that the cause of action vested in the father of the plaintiff's intestate or next of kin on her death and did not survive his death, the administrator being merely a nominal party. The bill of exceptions brings up this ruling of the trial court.

For the plaintiff in error, *Applegate & Hope.*

For the defendants in error, *Edmund Wilson* and *E. A. & W. T. Day.*

The opinion of the court was delivered by .

DEPUE, J. The sole question presented on the record is, Did the action abate on the death of the next of kin for whose benefit suit was brought? The administrator of the deceased is the party on the record in whose name as party the suit is prosecuted. The suit, therefore, did not by the practice and procedure at common law abate for the want of parties. The death of the administrator would not abate the suit. The suit would be continued in the name of the new administrator. *Mundt* v. *Glokner,* 24 *N. Y. App. Div.* 110. The substantial question in the case is whether the cause of action once vested was lost by the death of the beneficiary for whose benefit the suit was prosecuted. The question, therefore, is not one of procedure, but of right. *Martin* v. *Baltimore and Ohio Railroad Co.,* 151 *U. S.* 673.

By the common law, *actio personalis moritur cum persona,* and the death of the sole plaintiff or the sole defendant before final judgment abated a personal action. The principle on which this rule rested was that the cause of action did not survive to the personal representatives of a deceased person.

In discussing the effect produced upon the liability for wrong by the death of either the person wronged or the wrongdoer, Mr. Pollock declares this to be the least rational part of our law—that the rule *actio personalis moritur cum persona* seems to be without plausible ground and is a rule which has been made at all tolerable in a civilized country only by a series of exceptions. *Poll. Torts* 52, 53, 54.

The first modification of this common law rule was made by the statute of 4 *Edw. III.*, c. 7, which enacted that executors should have an action against trespassers for a trespass done to their testators, as of the goods and chattels of the testator carried away in life, and recover damages against the trespassers in the same manner as they whose executors they be should have had if they were in life. This right was extended to executors by 25 *Id.*, c. 5. By construction the statute was extended to administrators and to actions on the case and actions of *assumpsit* on simple contracts. *Pinchon's Case; 9 Co.* 86, 89. The statute of Edward III. did not extend to actions for injuries to the person or to the testator's freehold. The latter causes of action were left subject to the common law rule.

In this state the common law doctrine for the remedy of which the statutes of Edward III. were passed was further modified by the act of March 17th, 1855. The efficient words in this statute are " trespass to the person or property, real or personal." For such an injury the statute provides that the action shall survive to and against personal representatives. The first section, which confers a right of action upon executors and administrators to maintain an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, limits the damage to such damages " as the testator or intestate might have had or maintained if he or she was living." The second section, which imposes a liability upon executors or administrators for any trespass " to the person or property, real or personal, done by the testator or intestate in his lifetime," limits the right of action to the same action against

executors or administrators as the person sustaining the injury might have maintained against the testator or intestate if he were living. *Pamph. L.* 1855, *p.* 340. In virtue of this act it was held that an action to recover damages sustained by water being flowed back upon the plaintiff's land from the mill-dam of the defendant did not abate by death of the defendant after issue joined, but might be continued against his executor. *Ten Eyck* v. *Runk,* 2 *Vroom* 428. In *Tichenor* v. *Hayes,* 12 *Id.* 193, it was held that an action for negligence and deceit would lie aginst the personal representatives of the deceased wrongdoer in virtue of the statute. In the first of these cases it was said by Chief Justice Beasley that this act is highly remedial in its character. "Its intent was to relieve against the harsh injustice of the old rule '*actio personalis moritur cum persona.*' * * * The statute, therefore, is to be liberally construed so as to advance the remedy for this imperfection." The Chief Justice, in his opinion, declared that the word "trespass" in its comprehensive signification embraced every infraction of a legal right. "In this sense it comprehended not only forcible wrongs, where the damages were direct and immediate, but also acts the consequences of which made them tortious." He quotes with approbation an extract from *Tomlin's Law Dictionary,* where in defining the word this language was used: "So non-performance of promises and undertakings is a trespass upon which an action of trespass on the case is grounded ; and, in general, any misfeasance or act of one man whereby another is injuriously treated or damnified, is a transgression or trespass in the largest sense, for which an action will lie. * * * In my opinion the word 'trespass' as used in the section under consideration must be received as equivalent in meaning to the word 'tort,' so that the effect of the provision is to give a right of suit against the personal representatives of a deceased wrongdoer for *any injurious act of a suable nature,* without reference to the form in which the remedy must be sought."

This act did not give a remedy for injuries resulting from

the death of a person. This imperfection in the law was remedied by a later statute, viz., the act under which this suit was brought.

The *status* of the maxim *actio personalis moritur cum persona* in our judicial system will be exemplified by comparing *Hayden* v. *Vreeland*, 8 *Vroom* 372, with *Noice* v. *Brown*, 10 *Id.* 569. The opinion in each of these cases was delivered by Mr. Justice Van Syckel. In the first case it was held that an action for the breach of a promise of marriage could not, either at common law or within the act of 1855, be maintained by or against the personal representatives of either party to the contract, and was abated by the death of the defendant after issue joined. In the other case it was held that an action by a father for the seduction of his daughter in his lifetime might be maintained by his personal representatives. The decision in the first case was placed upon " the exceptional nature of the contract, the injury being purely personal." The learned judge in his opinion says : " This action does not survive at common law, not because it is *not* an action *ex contractu* as distinguished from tort, but for the reason that the injury is purely personal, in which the representative of the estate has no interest. * * * Its peculiarity lies in the fact that the injury to be compensated is exceptionally personal." In the second case the action was sustained on the ground that the wrong was of a twofold nature, wounding the father in his feelings and affecting his property rights, resting as it does on the technical ground that by the injury he lost service of some pecuniary value. The distinction between the two cases consists in that in the former the injury was purely personal and in the latter the cause of action related to property rights, which gave to the suit the quality of survivorship and took it out of the maxim *actio personalis moritur cum persona*. The force of these decisions, especially the last, will be apparent when the construction and effect of the act under which this suit was brought are considered.

The law on this subject was amended in England by 9 and

10 *Vict.*, *c.* 93, known as Lord Campbell's act, which was passed in 1846. This statute conferred a right of action in the name of the personal representatives of a person whose death has been caused by the wrongful act, neglect or default of the defendant for the benefit of the wife, husband, parent and child of the person whose death shall have been caused. This act created a new and anomalous kind of right and remedy by way of exception to the maxim *actio personalis moritur cum persona*. *Poll. Torts.* 58. In this state, by an act passed March 3d, 1848, entitled "An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default," remedy was given in every important particular analogous to that of the English statute. The act provides for an action brought by and in the names of the personal representatives of the deceased; it provides that the amount recovered shall be for the exclusive benefit of the widow and next of kin of such deceased person, and at the trial the jury might give such damages as they shall deem fair and just with reference to the pecuniary injury resulting from such death, &c. *Gen. Stat.*, *p.* 1188, §§ 10, 11.

The English courts in construing Lord Campbell's act hold that the statute gave to the personal representatives a cause of action beyond that which the deceased would have had if he had survived, and based on a different principle—a new right of action. *Pym* v. *G. N. Railway Co.*, 4 *Best & S.* 396 ; *Blake* v. *Midland Railway Co.*, 18 *Q. B.* 93, 110. In *Seward* v. *Vera Cruz*, 10 *App. Cas.* 59, 67, 70, in the House of Lords, Lord Selborne in construing Lord Campbell's act says : "It gives a new cause of action clearly, and does not merely remove the operation of the maxim *actio personalis moritur cum persona*, because the action is given in substance not to the person representing in point of estate the deceased man, who would naturally represent him as to all his own rights of action which would survive, but to his wife and children, no doubt suing in point of form in the name of his executor." Lord Blackburn said that "a totally new action

is given against the person who would have been responsible to the deceased if the deceased had lived; an action which is new in its species, new in its quality, new in its principles, in every way new, and which can only be brought if there is any person answering the description of widow, parent or child, who under such circumstances suffers pecuniary loss by the death." Not that the injury for the redress of which statutes of this kind are directed did not exist prior to this sort of legislation. That such an injury was not redressible at common law by an action was due to the fact that by a technical rule such an action was not maintainable. In *Haggerty* v. *Central Railroad Co.*, 2 *Vroom* 349, 350, which was a suit under our Death act, Chief Justice Beasley, in delivering the opinion of the court, said: "The design of the act cannot be mistaken. It is entirely and in the highest sense remedial in its nature. Its object was to abolish the harsh and technical rule of the common law, *actio personalis moritur cum persona*. The rule had nothing but prescriptive authority to support it; it was a defect in the law, and this statute was designed to remove that defect."

The grounds on which this common law rule was vindicated were that the policy of the law refuses to recognize the interest of one person in the death of another and that the value of human life is too great to be estimated in money. *Poll. Torts* 56, 57. In both of these respects the statute has wrought a change in the common law. The title of the act expresses the legislative purpose to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default. This purpose is consummated by enacting that the person or corporation whose wrongful act, neglect or default caused the death should be liable in damages; and the action brought in the name of the personal representatives of the deceased is given for the benefit of the widow and next of kin of the deceased; and the method by which the damages are to be adjusted is prescribed by the legislature to be such as the jury should deem fair and just with reference to the pecuniary injury resulting

from such death to the widow and next of kin. The statute having provided for an action to recover damages for the death of a person by the wrongful act of another, and having conferred a pecuniary interest in the life of such deceased for the benefit of his widow and next of kin, the grounds on which such an action was denied at common law have been entirely removed. The controlling feature in this legislation is that damages are made recoverable for causing death as compensation for the pecuniary injury the designated beneficiaries have sustained by reason of the death. If there be no widow or next of kin at the time of the death of the deceased the pecuniary injury contemplated by the statute does not exist and the action cannot be maintained. It is also clear that the pecuniary injury to be compensated for is that of the widow or persons who are next of kin at the time of the death of the deceased, and that the cause of action created by the statute enures to such persons as a vested right. By this statute a property right is created in the beneficiary of such a nature as under the ruling in Noice *v.* Brown would give the action the quality of survivorship and take it out of the maxim *actio personalis moritur cum persona.*

The pecuniary injury of the beneficiary begins immediately on the death of the deceased, and is a continuing injury until compensated for under the conditions expressed in the act. Suit must be brought within one year after the death of the deceased, but how long the litigation may be protracted is problematical. If the death of the beneficiary before the end of the litigation discharges the liability of the wrongdoer, the legislative purpose that the wrongdoer should make compensation to the beneficiary for the pecuniary injury sustained by him would be defeated. Such a construction would be contrary to the policy of this legislation and would thrust into the administration of a statutory proceeding, which our courts have declared should be beneficially construed, a technical rule of the common law of harsh injustice.

The death of the beneficiary pending suit will have a con-

trolling influence over the quantum of recovery. The personal injury sustained would be limited in duration and extent to his lifetime. But the death of the beneficiary pending suit cannot be made available to abrogate the liability of the wrongdoer incurred for the pecuniary injury already sustained. The right to compensation vested in the beneficiary immediately upon the death of the deceased. By the death of the beneficiary pending suit there was neither an abatement of the action in the common law sense, nor was the cause of action to be compensated for discharged. It is contended, however, that inasmuch as the statute does not provide for an executor or administrator for the beneficiary in case of his death before the suit is determined the action therefore abates; but no purpose would be accomplished by introducing such a personal representative into the record. The legislature selected the personal representative of the original deceased as the party by whom the action should be brought, to whom the control of the suit was committed, to conduct it for the benefit of the next of kin. The proceeds of the suit, when realized and in the hands of such personal representative, would be assets of the beneficiary, to be disposed of by his will or under the statute of administration, whether the beneficiary died before or after final judgment was recovered. Until the proceeds are required to be distributed as provided by the act there is no occasion for an executor or administrator of any deceased beneficiary. The father in this instance at the time of his death left children surviving him. There was, therefore, no failure of representatives among whom the assets of his estate by law might be distributed. His right to be compensated for the pecuniary injury he sustained was such a property right as under the legal principles that controlled in the construction of the preceding statutes would give the cause of action the quality of survivorship and take it out of the maxim *actio personalis moritur cum persona.* By the machinery adopted by this statute for the enforcement of this pecuniary injury such a suit would survive to the personal representatives of the first deceased.

With respect to the damages recoverable in such a suit, they are not such as arise from injury to the feelings, but are awarded in reference to a pecuniary loss, and in estimating damages the jury cannot take into consideration mental suffering or loss of society, but must give compensation for pecuniary injury only.   Such an action cannot under the terms of the statute be maintained for nominal damages.   *Blake* v. *Midland Railway Co.*, 18 *Q. B.* 93 ; *Franklin* v. *S. E. Railway Co.*, 3 *Hurlst. & N.* 211, 215 ; *Duckworth* v. *Johnson*, 4 *Id.* 653 ; *Sm. Neg.* 243.   Not that the proof with respect to the personal injury need be such that the amount of such damages may appear with exactness.   If the evidence be such as to show a reasonable expectation of pecuniary advantage, the extinction of such an expectation by an act occasioning the death of the party from whom it arises will sustain the action, and it is for the jury to say under all the circumstances, taking into account all the uncertainties and contingencies of the particular case, whether there was such a reasonable and well-founded expectation of pecuniary benefit as could be estimated in money, and so become the subject of damages.   *Pym* v. *G. N. Railway Co.*, 2 *Best & S.* 759, 768 ; 8 *Rul. Cas.* 419 ; *Paulmier* v. *Erie Railroad Co.*, 5 *Vroom* 151, 158.   In the case last cited Chief Justice Beasley said : " It will be observed that this rule assumes that the pecuniary injury designated by the statute is nothing more than a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased.   It is upon this principle that our statute is to be applied.   The jury must weigh probabilities, and to a large extent form their estimate of damages on conjectures and uncertainties."

It may be gathered from the record that the injury that caused the death of the deceased occurred on the 25th of January, 1896.   The suit was brought on the 1st of December of that year, and it was brought on for trial in January, 1898.   By the record it appears that the plaintiff produced testimony tending to show that the death of the plaintiff's

intestate was caused by the negligence of the defendants; that her next of kin was her father, Peter Hunley, to whom, and to her mother, the decedent had been accustomed to make pecuniary contributions; that pending this suit the said Peter Hunley died intestate. There was such evidence with respect to the pecuniary injury sustained by the father as under the cases cited was competent to go to the jury on the issue of damages contemplated by the statute.

The judgment of nonsuit should be set aside.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, LIPPINCOTT, GUMMERE, LUDLOW, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 13.