Arlene JOHNSON, as Trustee for the
Heirs of Karen Kay Lundquist,
Decedent, Plaintiff,

v.

CONSOLIDATED FREIGHTWAYS,
INC., Defendant.

No. C8–87–1923.

Supreme Court of Minnesota.

March 18, 1988.

William M. Schade, New Ulm, for plaintiff.

William A. Moeller, New Ulm, for defendant.

POPOVICH, Justice.

The United States District Court, District of Minnesota, as authorized by Minn.Stat. § 480.061 (1986), certified to this court four questions:

1. When a surviving spouse or next of kin of a decedent dies after commencement of a wrongful death action pursuant to Minnesota Statutes, § 573.02, does the trustee's claim for damages for pecuniary loss sustained by decedent survive his or her death?

2. Is a determination of a driver's comparative fault in an arbitration proceeding for uninsured motorist benefits res judicata or does such determination constitute collateral estoppel in a subsequent wrongful death action?

3. To what extent are survivor economic loss benefits, funeral and burial expense benefits, and survivor's replacement services loss benefits paid to the surviving spouse pursuant to Minnesota Statutes, § 65B.44, subdivisions 4, 6, and 7, deducted from a recovery by the trustee in a wrongful death action brought pursuant to Minnesota Statutes, § 573.02, when the surviving spouse dies before resolution of the case?

4. Are uninsured motorist benefits paid to the trustee for the surviving spouse and next-of-kin deducted from a recovery by the trustee in a wrongful death action where the person to whom the proceeds were paid by the trustee pursuant to court order dies before resolution of the wrongful death action?

We find (1) a wrongful death claim survives the beneficiary's death before judgment; (2) collateral estoppel does not apply to the prior fault determination in this case; and (3) both basic economic loss and uninsured motorist benefits previously paid should be deducted from any wrongful death award payable to the spouse's estate.

This action arises out of an automobile accident that occurred near Minneola, Kansas, on September 4, 1982. Robert J. Lundquist was driving when his vehicle collided with a large wheel rim and tire lying on the highway. He lost control of the vehicle, which left the road and rolled over. His wife, Karen Kay Lundquist, was a passenger, and she sustained injuries resulting in her death.

At the time of the collision, Robert Lundquist was insured by Ohio Farmers Insurance Company (Ohio Farmers), which paid basic economic loss benefits including $760.50 in medical expense benefits, $2,500 in funeral expenses, and $20,000 in survivor's replacement service loss. Because Ohio Farmers could not identify the owner of the wheel rim and tire, Robert Lundquist claimed he was entitled to uninsured motorist benefits for his own injuries, as well as damages resulting from the death of his wife. He sued Ohio Farmers in Brown County, Minnesota, demanding among other things that Ohio Farmers arbitrate damages owed under the uninsured motorist provisions of the insurance contract. The Brown County District Court ordered summary judgment for Robert Lundquist in August, 1984.

Arlene Johnson, trustee for the heirs of Karen Lundquist, also filed an uninsured motorist claim and eventually settled with Ohio Farmers for the full policy limit of $50,000. The settling parties agreed total damages might exceed payments made and the trustee expressly reserved the balance of the cause of action which might exist against any other person or persons. Upon the trustee's petition for determination of proportionate pecuniary loss, the Brown County District Court ordered her to distribute the entire uninsured motorist bene-fit to Robert Lundquist, less attorney fees and disbursements.

Robert Lundquist proceeded to arbitration on his claim for personal injuries. On February 14, 1985, the arbitrators found him 20 percent at fault and awarded damages in the amount of $27,500 plus attorney fees, taxable costs, and disbursements.

On May 2, 1985, trustee Johnson filed this wrongful death action against Consolidated Freightways, Inc., claiming defendant owned the wheel rim and tire, and the collision that caused Karen Kay Lundquist's death was the direct result of defendant's negligence. On April 1, 1987, after discovery was completed but before trial was scheduled, Robert Lundquist died of natural causes wholly unrelated to the accident. Robert and Karen Lundquist had no children; Karen Lundquist's sisters, Marilyn Larson and Eileen Olson, remain as her surviving heirs. The record does not indicate who are Robert Lundquist's heirs.

## I.

The federal court asks first whether, when a surviving spouse or next of kin dies after a wrongful death action has been filed, the claim for that beneficiary's pecuniary loss survives. This court has never addressed the question, perhaps surprisingly as the action has been available by statute since 1851. See Minn.Rev.Stat. (Terr.) c. 78, § 3 (1851). Other jurisdictions have reached varying conclusions, depending to some extent on the wording of their wrongful death or general survival statutes. Defendant contends Minn.Stat. § 573.02 (1986) unambiguously creates a right personal to the surviving spouse and next of kin, which therefore abates upon the beneficiary's death. The argument requires a brief historical review of the wrongful death action.

Wrongful death was a cause of action unknown at common law, in line with the general view that tort claims die with both the victim and perpetrator. See W. Prosser, *Handbook of the Law of Torts* § 127, at 901 (4th ed. 1971). The first statutory change came with Lord Campbell's Act of

1846, which created a new cause of action for the benefit of certain designated beneficiaries. *Id.* at 902; Lord Campbell's Act, 1846 (9 & 10 Vict. c. 93). Most states later enacted "death statutes" modeled after Lord Campbell's Act, including Minnesota in 1851. Prosser, § 127 at 902; *Bonhiver v. Fugelso, Porter, Simich and Whiteman, Inc.,* 355 N.W.2d 138, 141 (Minn. 1984). The Minnesota statute authorized decedent's personal representative to seek recovery "for the exclusive benefit of the widow and next of kin," distributed in the same proportions as the decedent's personal property. Minn.Rev.Stat. (Terr.) c. 78, § 3 (1851). A 1905 amendment changed "widow" to "spouse," and later amendments provided maintenance of the action by a court-appointed trustee and distribution of the recovery "proportionate to the pecuniary loss severally suffered by the death." 1905 Minn.Rev.Laws, c. 87, § 2; 1951 Minn.Laws c. 697, § 1; 1955 Minn. Laws c. 407, § 1.

Early Minnesota decisions explained the action as a right belonging exclusively to the surviving beneficiaries, with compensation for their pecuniary loss being the "sole purpose." *Schwarz v. Judd,* 28 Minn. 371, 372, 10 N.W. 208, 209 (1881); *Foot v. Great Northern Railway Co.,* 81 Minn. 493, 494, 84 N.W. 342, 343 (1900). Accordingly, the action could not be maintained unless the decedent left a surviving spouse or next of kin. *Moore v. Palen,* 228 Minn. 148, 152, 36 N.W.2d 540, 542 (1949).

Defendant argues any claim must therefore die with the beneficiary, because the alternative benefits others never meant to recover for decedent's death. Some courts considering comparable statutes have shared this view. *See Schmidt v. Menasha Wooden–Ware Co.,* 99 Wis. 300, 301, 74 N.W. 797, 798 (1898); *Doyle v. Baltimore & O.R. Co.,* 81 Ohio St. 184, 90 N.E. 165 (1909).

Other courts construe the wrongful death claim to survive, and contrary to respondent's contention, that result does not seem to depend on the absence of the phrase "exclusive benefit" from the statute. The West Virginia Supreme Court of Appeals read the phrase into a statute that simply called for distribution to "dependent distributees." *Adams v. Sparacio,* 156 W.Va. 678, 692, 196 S.E.2d 647, 656 (1973). That court apparently saw the limitation on recovery as a reason for, rather than an obstacle to, survival of the claim. It stressed the action is not brought on behalf of decedent's estate, but rather, "being an action brought exclusively for the benefit of the dependent distributee, such action survives to such dependent distributee's estate upon her death." *Id.*

The New Jersey high court similarly held the claim survives under a statute that expressly directs recovery "for the exclusive benefit of the widow and next of kin." *Cooper v. Shore Electric Co.,* 63 N.J.L. 558, 44 A. 633, 636 (1899). The action, it held, compensates persons who are next of kin "at the time of the death," and they sustain an injury from that moment on. *Id.* Any damages eventually awarded "would be assets of the beneficiary * * * whether the beneficiary died before or after final judgment was received." *Id.* This court pointed in the same direction when it held the cause of action under section 573.02 "arises at the time of the decedent's death," so damages should be determined according to circumstances at that time. *Davis v. Liesenfeld,* 308 Minn. 1, 4, 240 N.W.2d 548, 549 (1976).

The Washington Supreme Court further emphasized the non-personal nature of a wrongful death claim, observing that the action is not solely intended "to provide a means of support *during life* for the beneficiary." *Gray v. Goodson,* 61 Wash.2d 319, 329, 378 P.2d 413, 419 (1963) (emphasis added). Other factors can be important in determining damages, such as companionship, care and advice. *Id.*

It is not clear that Minn.Stat. § 573.02 creates a purely personal right simply because it designates specified beneficiaries. Such designation ensures any wrongful death recovery is unavailable to decedent's creditors. *See* Prosser, § 127 at 904. Indeed, cases emphasizing the exclusive nature of the action seem most concerned about potential intrusion on the award by

those with some interest in decedent's estate. *See Schwarz,* 10 N.W. at 209 (damages are designed as compensation to certain persons "and not to the general estate"); *Fehland v. City of St. Paul,* 215 Minn. 94, 101, 9 N.W.2d 349, 353 (1943) ("the widow may not even select her statutory allowance" out of the wrongful death recovery). We recently found additional significance in the "exclusive benefit" language of section 573.02, noting it supports the conclusion that wrongful death claims are not assignable. *Regie De L'Assurance Automobile de Quebec v. Jensen,* 399 N.W. 2d 85, 89 (Minn.1987). We stressed that restriction protects against maintenance and champerty. *Id.* Survival of a claim to the beneficiary's legal heirs poses no such risk of bargaining with unrelated parties for an interest in the action. It is also clear the statute is not solely intended to provide support during the designated beneficiary's life. The spouse or next of kin need not be monetarily dependent on decedent to recover, and "pecuniary loss" under section 573.02 is not limited to loss of income or financial support. *Rath v. Hamilton Standard Division of United Technologies Corp.,* 292 N.W.2d 282, 284–85 (Minn. 1980); *see also Gray v. Goodson,* 61 Wash. 2d 319, 329, 378 P.2d 413, 419 (1963).

If designated beneficiaries survive decedent, the right to seek compensation vests and can be viewed as an asset belonging to them whether they live or die. The United States Supreme Court adopted this approach in *Van Beeck v. Sabine Towing Co.,* 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685 (1937), construing a wrongful death action under the Merchant Marine Act, 46 U.S.C. § 688, and the Employers' Liability Act, 45 U.S.C. 51. The court distinguished an action by decedent for personal injuries from the independent action under the "death statutes" to compensate beneficiaries for their pecuniary damages. *Id.* at 349, 57 S.Ct. at 455. It concluded the latter action "once accrued is not divested or extinguished by the death of one or more of the beneficiaries thereafter, but survives, like a cause of action for injury to a property right or interest." *Id.* Many state courts have long followed the same rule, constru-

ing statutes that similarly restrict recovery to designated beneficiaries. *See Meekin v. Brooklyn Heights R. Co.,* 164 N.Y. 145, 153, 58 N.E. 50, 53 (1900); *Cooper v. Shore Electric Co.,* 63 N.J.L. 558, 565–66, 44 A. 633, 635–36 (1899); *McDaniel v. Bullard,* 34 Ill.2d 487, 492–93, 216 N.E.2d 140, 143–44 (1966).

Survival of the claim is consistent with the very nature of the wrongful death action, which compensates injury to the beneficiary's estate. *See Meekin,* 58 N.E. at 51; *McDaniel,* 216 N.E.2d at 144. When a beneficiary dies before judgment, the injury remains and simply goes uncompensated if the claim abates. The old nonsurvival rule sprang from the medieval view of torts as a form of revenge incapable of being continued on behalf of either victim or wrongdoer. *McDaniel,* 216 N.E.2d at 144. Survival of actions was gradually allowed as torts came to be viewed as compensatory rather than punitive, and now "there is no reason why an estate that has been injured or depleted by another should not be compensated whether the injured party is living or not." *Id.*

We likewise rejected the archaic rationale for abatement when we struck as unconstitutional the exclusion of intentional torts from Minnesota's general survival statute, Minn.Stat. § 573.01. *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 406 (Minn.1982). As we pointed out there, the modern trend is "that tort causes of action and liabilities are as fairly a part of the estate of either plaintiff or defendant as contract debts, and that the question is rather why a fortuitous event such as death should extinguish a valid action." *Id.* at 405, n. 8, citing Prosser at 901. Further, while the right to maintain a wrongful death action has been strictly construed, the remedy provisions are remedial in character and the court construes them liberally in light of current social conditions. *Bonhiver v. Fugelso, Porter, Simich and Whitman, Inc.,* 355 N.W.2d 138, 141 (Minn.1984); *Fussner v. Andert,* 261 Minn. 347, 354, 113 N.W.2d 355, 359 (1961).

Common law trends aside, the general survival statute supports and compels survival of wrongful death claims under the general rule that all causes of action survive except those "arising out of an injury to the person." Minn.Stat. § 573.01 (1986). These latter actions continue "as provided in Section 573.02." *Id.* This section does not allow survival of decedent's action, but rather creates an entirely new cause of action, the beneficiaries of which are third parties claiming pecuniary loss from the wrongdoer's act. *Regie*, 399 N.W.2d at 89; *Shumway v. Nelson*, 259 Minn. 319, 322, 107 N.W.2d 531, 532–33 (1961). Their claim obviously stems from decedent's death, but it does not "aris[e] out of an injury to the person," because that phrase in section 573.01 "refers to only two persons, the injured person and the one who perpetrated the injury." *Fowlie v. First Minneapolis Trust Co.*, 184 Minn. 82, 84, 237 N.W. 846, 847 (1931). Once created, then, the third party's claim for damages from another's wrongful death survives under the general rule set out in section 573.01.

■ We hold that when a decedent's surviving spouse or next of kin dies after commencement of a wrongful death action, the trustee may recover on behalf of the spouse or kin's estate. Damages are, of course, limited to pecuniary loss sustained by the beneficiary, and are therefore based only on the period during which the beneficiary actually survived decedent. *Schneider v. Baisch*, 256 N.W.2d 370, 372 (N.D. 1977). While the court allocates the jury's award according to each beneficiary's proportionate pecuniary loss, the fact of a beneficiary's death must be available to the jury so it can determine the "fair and just" loss from decedent's death. *See* Minn.Stat. § 573.02, subd. 1. This circumstance, we note, is an exception to the general rule that evidence of events subsequent to decedent's death is inadmissible on the issue of damages. *Davis*, 240 N.W.2d at 549. Evidence of the beneficiary's death simply fixes that person's life expectancy, which must otherwise be estimated. *Schneider*, 256 N.W.2d at 372.

## II.

Before his death, Robert Lundquist submitted his own claim for personal injuries to arbitration, pursuant to his uninsured motorist contract. The arbitrators allocated 80 percent of the fault to the "unidentified company or person" responsible for a wheel lying on the highway, and 20 percent to Robert Lundquist, who was driving when his car struck the wheel. Defendant contends the arbitration fault finding should govern in the current wrongful death action, thereby reducing any award to Lundquist's estate. The second certified question apparently asks whether, as a matter of law, collateral estoppel applies to an issue determined in insurance arbitration. We need not reach that question, however, as we find the facts do not support estoppel in any event.

■ Collateral estoppel is the "issue preclusion" branch of the res judicata doctrine. *Ellis v. Minneapolis Commission on Civil Rights*, 319 N.W.2d 702, 703 (Minn.1982). It applies where (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Id.* at 704.

■ Though this court has not addressed collateral estoppel and arbitration, it has applied the doctrine to other informal proceedings. *See, e.g., Mattsen v. Packman*, 358 N.W.2d 48, 50 (Minn.1984) (conciliation court). Further, as respondent argues, it is well settled that arbitration is meant to be a final judgment of both law and fact. *State, by Sundquist, v. Minnesota Teamsters Public and Law Enforcement Employees Union Local No. 320*, 316 N.W.2d 542, 544 (Minn.1982); *Park Construction Company v. Independent School District No. 32*, 216 Minn. 27, 33, 11 N.W.2d 649, 652 (1943). Still, neither collateral estoppel nor res judicata is rigidly applied. *AFSCME Council 96 v. Arrowhead Regional Corrections Board*, 356 N.W.2d 295, 299 (Minn.1984). As a flexible doctrine, the focus is on whether its appli-

cation would work an injustice on the party against whom estoppel is urged. *Jeffers v. Convoy Co.,* 636 F.Supp. 1337, 1339 (D.Minn.1986).

■ Defendant Consolidated Freightways was not a party to the arbitration proceeding, raising serious doubt about plaintiff's opportunity to fairly litigate comparative fault. It seems to us plaintiff deserves a chance to try the case against the real defendant, the alleged tortfeasor. Plaintiff could conceivably produce evidence that would allow the fact-finder to conclude defendant's causal negligence exceeded 80 percent, or defendant might prove plaintiff's negligence was more than 20 percent. The arbitrators, by contrast, could only have considered Lundquist's fault in isolation, mechanically assigning the balance of fault to the unknown wheel owner.

While defendant for reasons of its own is content to be bound by an 80–percent fault assignment here, others in similar circumstances might feel differently and would not want to be bound by a proceeding where they were not a party. Parties may sometimes invoke collateral estoppel even when they would not have been bound by the prior proceeding. *See, e.g., Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 559 (Minn.1977); *Lustik v. Rankila,* 269 Minn. 515, 519–22, 131 N.W. 2d 741, 744–45 (1964). However, we are troubled by the suggestion that defendant may choose when the prior finding binds both parties and when it does not. The arbitration proceeding afforded neither party a "full and fair opportunity" to litigate comparative fault, based as it was on only part of the pertinent facts and parties. Defendant may not opt for a binding effect simply because it perceives some advantage in doing so here. The arbitrators'

determination, based on these facts, in our view does not preclude litigation of the fault issue in the pending wrongful death action.

### III.

■ The last two questions involve the deduction of prior insurance payments from any wrongful death recovery. Under Minn.Stat. § 65B.51, subd. 1 (1986), the value of economic loss benefits paid must be deducted from any recovery in a negligence action arising from the same event. Similarly, Minn.Stat. § 548.36, subds. 2, 3 (1986), requires the trial court, on motion from a party, to reduce the award in any civil action by amounts of collateral sources paid for plaintiff's benefit.[1] Collateral sources include automobile accident insurance. Minn.Stat. § 548.36, subd. 1(2). Ohio Farmers paid Robert Lundquist basic economic loss benefits, and also paid the trustee uninsured motorist benefits for pecuniary loss. The net pecuniary loss proceeds were distributed entirely to Robert Lundquist under a court order with the written consent of Karen Lundquist's two surviving sisters.

Both parties maintain that if Robert Lundquist's claim survives his own death, as we hold it does, the deductions under sections 65B.51 and 548.36 apply to any recovery allocated to his estate. We agree. The purpose of both statutes is to prevent duplicate recovery. *Tuenge v. Konetski,* 320 N.W.2d 420, 422 (Minn.1982); *Buck v. Schneider,* 413 N.W.2d 569, 572 (Minn.App. 1987). That possibility is avoided if the wrongful death beneficiary, living or dead, recovers only amounts not previously compensated by basic economic loss or uninsured motorist benefits.[2]

---

1. The reduction is not required for collateral sources "for which a subrogation right has been asserted." Minn.Stat. § 548.36, subd. 2(1). For the purposes of this opinion, we assume no such right has been asserted.

2. Plaintiff argues in briefs that pecuniary loss under section 573.02 is made up of both lost wages and loss of aid, advice and comfort, and collateral source reductions must be taken sepa-

rately against these two components. We have sanctioned a similar process for the basic economic loss offset under section 65B.51. *See Tuenge,* 320 N.W.2d at 421–22. At oral argument, however, counsel apparently conceded the full uninsured motorist payment for pecuniary loss should be deducted from any section 573.02 recovery payable to Robert Lundquist's estate.

We note, however, that decedent's surviving sisters qualify as "next of kin" under section 573.02 and are entitled to recover if they can prove pecuniary loss from decedent's death. *See Martz v. Revier*, 284 Minn. 166, 170 N.W.2d 83 (1969). Defendant suggests the sisters are estopped from claiming pecuniary loss because they agreed to the distribution of uninsured motorist benefits to Robert Lundquist. Decedent's sisters expressed their desire "that the net proceeds from the insurance company should go to Bob Lundquist," but there is no evidence they simultaneously waived their right to pecuniary loss in a subsequent wrongful death action. Should they recover, their award is not subject to deduction under either section 65B.51 or 548.36. Those beneficiaries have never received relevant insurance payments, so a deduction would actually deny them full compensation for their pecuniary loss. Deduction is properly taken only against the portion of any award allocated to Robert Lundquist's estate.

Certified questions answered.