Roger **VILLARREAL**, Respondent,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 659, Northfield, Minnesota, Petitioner, Appellant.**

No. C6–93–634.

Supreme Court of Minnesota.

Aug. 26, 1994.

Richard J. Thomas, Bryon G. Ascheman, Geraghty, O'Loughlin & Kenney, St. Paul, for appellant.

Gregg M. Corwin, Karin Peterson, Gregg M. Corwin & Associates, St. Louis Park, for respondent.

Harley M. Ogata, Christina L. Clark, Roger L. Barrett, Rebecca Hamblin, St. Paul, for amicus curiae Minn. Educ. Assoc.

## OPINION

COYNE, Justice.

Independent School District No. 659, Northfield, Minnesota has obtained review of a split decision of the court of appeals reversing summary judgment entered in favor of the district and remanding to the trial court for proceedings on the merits of Roger Villarreal's claim that the school board's actions in connection with his termination violated the Minnesota Human Rights Act, Minn. Stat. § 363.03, subd. 1(2) (1992). *Villarreal v. Independent Sch. Dist. No. 659*, 505 N.W.2d 72 (Minn.App.1993). The appellate court concluded, first, that school districts are not absolutely immune from a Human Rights Act claim for discriminatory discharge when teachers are terminated following a statutory hearing pursuant to Minn. Stat. § 125.12 (1992), and, second, that Villarreal is not collaterally estopped from pursuing the claim. *Id.* at 76–77. One judge dissented, opining that the termination hearing officer's determination of unfitness to teach estopped Villarreal from demonstrating the requisite qualification for the position from which he was discharged. *Id.* at 77–78. We reverse and reinstate the summary judgment.

Roger Villarreal is Mexican–American and was employed by the district as a Spanish and history teacher for 21 years; for the last 10 years he taught Spanish exclusively. Although described by many students and others as a good teacher, over the years Villarreal has had numerous encounters with both students and school administrators; several of those encounters could be characterized as violent. As early as 1977, the school principal warned him to refrain from physically handling students who disobey school regulations; in 1985 the assistant principal informally reprimanded him for grabbing a student; and as recently as May 5, 1989, the city attorney informed him in writing that he had seriously considered bringing assault charges in connection with an altercation between Villarreal and a student in which the teacher allegedly swung at the student. His teaching career has been similarly characterized by multiple occasions of verbal abuse and profanity.

The conduct which precipitated Villarreal's dismissal occurred on October 15, 1990. While supervising a study hall, Villarreal noticed that a student had fallen asleep. He became enraged, slammed the desk in front of the student to awaken him, threw his books on the floor, shouted profanities and dismissed the student from the hall. The student later testified that the altercation ripped open stitches on his finger, and students and teachers in nearby classrooms testified that the incident was of sufficient magnitude to disturb their settings. After investigation, Charles Kyte, the Northfield School District Superintendent, felt that "there was an imminent danger to the children" and proposed Villarreal's termination.

The school board voted to terminate Villarreal on November 12, 1990. He received notice on November 13, 1990 and requested a hearing pursuant to Minn.Stat. § 125.12, subd. 9. An independent hearing officer was appointed and presided over the hearing at which both the board and the teacher were represented by counsel and during which extensive testimony was taken and documentary evidence admitted. The officer found numerous instances of misconduct toward both students and other teachers involving

violence and profanity and acknowledged the documented warnings provided to Villarreal. She concluded that there was substantial and competent evidence upon which to terminate Villarreal and that his actions constituted conduct unbecoming a teacher, gross inefficiency, and willful neglect of duty sufficient to warrant immediate discharge pursuant to Minn.Stat. § 125.12, subd. 8. In addition, she noted both "immoral conduct [and] insubordination." The school board accepted the hearing officer's report and recommendation and terminated Villarreal. On Villarreal's appeal by writ of certiorari, the court of appeals affirmed in an unpublished opinion. *In re Villarreal,* No. C1–91–1072, 1991 WL 245253 (Minn.App. Nov. 26, 1991).

Villarreal then commenced this action in district court alleging that the school district "illegally and discriminatorily terminated [him] from his employment" in violation of the Human Rights Act, Minn.Stat. § 363.03, subd. 1(2). Apparently later conceding that he could not base his discrimination allegation on conduct arising in connection with the termination hearing provided in accordance with Minn.Stat. § 125.12, subds. 8 and 9, he limited that allegation to the school district's initial decision to discharge him.

The school district moved for summary judgment, arguing alternatively that the doctrine of quasi-judicial immunity shields its board from liability under the Human Rights Act for its decision to discharge this teacher or that Villarreal was collaterally estopped from relitigating the question of his qualification or fitness to teach—a prerequisite to establishing a prima facie case for discrimination. Persuaded that the doctrine of absolute quasi-judicial immunity barred the claim, the trial court granted the motion for summary judgment. *See Freier v. Independent Sch. Dist. No. 197,* 356 N.W.2d 724, 728 (Minn.App.1984). While the trial court did not address the alternative basis for the summary judgment motion—the collateral estoppel issue—on appeal, the issue was revived and decided by the court of appeals.

We observe that resolution of either of the threshold questions of quasi-judicial immunity or the application of the doctrine of collateral estoppel in favor of the school district necessarily operates to bar this action. We turn first to a consideration of whether in the circumstances of this action Villarreal has made the requisite prima facie showing of racial discrimination so as to render summary judgment inappropriate. *See Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 442 (Minn.1983).

In this regard, the majority of the court of appeals' panel relied upon our analysis of issue preclusion contained in *Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114 (Minn. 1991), analogizing Villarreal's racial discrimination claim to the retaliatory discharge and free speech claims which were allowed to proceed. However, in our view, the claim asserted here is sufficiently distinctive that it defies that analogy.

In *Graham,* a suspended teacher commenced an action against the school district alleging defamation and retaliation, later amending her complaint to add a claim for deprivation of First Amendment free speech rights. *Id.* at 115. While that action was pending, the school district discharged the teacher, a decision later affirmed by the court of appeals. In granting the district's motion for summary judgment, the trial court held that Graham was collaterally estopped from relitigating certain factual issues essential to the asserted claims because those issues had been decided adversely to her in the termination proceedings. The court of appeals affirmed. *Id.*

We affirmed the summary judgment on the defamation claim but reversed the holding with regard to the retaliatory discharge and free speech claims. Critical to the disposition was the recognition that factual issues related to the affirmative defense of retaliation are

> so intertwined with the statutory grounds for discharge that the factfinder must deal with them, even though the primary purpose of the proceeding is to determine if statutory grounds for discharge exist.

*Id.* at 118. Having pointed out that discharge does not occur until the school board acts on the hearing examiner's report, we observed that discharge did not depend only on the board's acceptance of the hearing

examiner's findings with respect to the teacher's conduct but that the teacher's presentation of the affirmative defense of retaliatory discharge forced the school board to judge whether its own decision to discharge was made in retaliation for her reporting possible violations of school programs to the State Department of Education, "a matter on which the school board cannot realistically distance itself by accepting the hearing examiner's findings, as it can findings on teacher misconduct only." *Id.* at 119. Implicit in that analysis is the recognition that Graham had made a prima facie showing of discriminatory treatment—namely, that her discharge may have been motivated by retaliation.

Therein lies the distinction between the *Graham* retaliatory discharge claim and Villarreal's racial discrimination claim. Proof of retaliatory discharge demands evidence that the discharge was motivated by the plaintiff's good faith refusal to violate the law. *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 572 (Minn.1987); Minn.Stat. § 181.932, subd. 1(c) (1994). On the other hand, proof of racial discrimination in the workplace in violation of the Human Rights Act requires first a showing that the plaintiff was qualified for the position. *Hubbard*, 330 N.W.2d at 442 (Supreme Court's formulation in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), of the plaintiff's prima facie case of discriminatory hiring slightly modified to fit a claim of discriminatory discharge: "The discharged employee carries the initial burden of establishing a prima facie case by showing (1) he is a member of a protected class; (2) he was qualified for the job from which he was discharged; (3) he was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work."). *Hubbard*, 330 N.W.2d at 442.

The distinction is crucial because in the former instance evidence of the employer's motivation for discharge is an essential element of the plaintiff's prima facie case, whereas in the latter instance the employer's motive for discharge is simply irrelevant until the employee has demonstrated his qualification for the position.[1]

In the case before us Villarreal cannot demonstrate an essential element of his claim of unlawful racial discrimination. Villarreal cannot show that he is qualified for the position from which he was discharged, for his unfitness to be a teacher has already been established in the termination proceeding. Unlike the *Graham* retaliatory discharge defense, which required consideration of the employer's as well as the employee's conduct, Villarreal's fitness to continue as a teacher was the sole issue in the proceeding before

---

1. The dissent insists that Villarreal is entitled to judicial review of his claim of discrimination violative of the Minnesota Human Rights Act. The dissent fails, however, to recognize that a showing that the complainant is qualified for the position is essential to assertion of a claim of unlawful discrimination. Relying on *Shockency v. Jefferson Lines*, 439 N.W.2d 715 (Minn.1989), the dissent argues that all Villarreal need show is that some teacher who is not a member of a protected class was not discharged for similar conduct. But in *any* discrimination claim, the plaintiff must show qualification for the job involved, and no one ever contended that Shockency was not qualified for his job as a safety checker. He was fired because he was tardy or absent 219 times during a 4-year period in violation of Jefferson's attendance policy. *Id.* at 716. But even though Shockency had proved that a "nonminority employee" had not been discharged under apparently similar circumstances, he had failed to show a violation of the MHRA because the reasons for his discharge were not pretextual. *Id.* at 719.

In short, *Shockency* involved neither the plaintiff's qualifications for his job nor collateral estoppel. The dissent complains that collateral estoppel is inapplicable to Villarreal's discrimination claim because the issue in his discrimination action differs from that decided in his statutory termination hearing. That Villarreal is unfit to be a teacher is a *fact* that has been finally established. Villarreal *cannot* demonstrate that he is qualified for the position of teacher, a threshold requirement for assertion of a claim of unlawful discrimination. Even if it could be shown that some other teacher was abusive to students but had not been discharged, that would not make Villarreal qualified. It would merely show that the school board is not doing its job. Despite his command of the subject matter and his ability to motivate some students, Villarreal's violent abuse of other students renders him unfit to teach. The dissent acknowledges that teacher abuse of any student is unacceptable. The fact that Villarreal has abused students has already been proved in a full and fair hearing. There was nothing pretextual about the termination of Villarreal's employment.

the hearing examiner. The school board's conduct was not at issue. Accordingly, just as we held in *Graham* that the plaintiff's defamation action must be dismissed because she was precluded by reason of collateral estoppel from relitigating the question of her misconduct, so also do we hold that Villarreal is collaterally estopped from once again arguing that his violent abusive conduct does not disqualify him as a teacher. We note that the finding of misconduct was made after a full and fair hearing before an experienced independent hearing examiner as we directed in *Kroll v. Independent Sch. Dist. No. 593*, 304 N.W.2d 338, 345 (Minn.1981). Because Villarreal's claim has foundered on the first step of the three-part inquiry set out in *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824, and in *Hubbard*, 330 N.W.2d at 442, and because that failure defeats his action, summary judgment in favor of the school district was appropriate. The court of appeals substituted its assumption that Villarreal was qualified to teach in the face of a finding that his conduct disqualified him in order to reach the second step of the inquiry related to reasons for the discharge, and to that extent its analysis is deficient.

Because the disposition herein operates to bar this action on one of alternative grounds, we do not reach the question of whether the school board is insulated from liability for its actions in commencing the termination proceeding by the principle of quasi-judicial immunity.

Reversed and summary judgment reinstated.

ANDERSON, J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I disagree with the court's use of the doctrine of collateral estoppel to foreclose any examination of an employee's disparate treatment discrimination claim.[1]

Collateral estoppel should only be applied to an issue identical to that raised in a prior adjudication. *Graham v. Special Sch. Dist.*

*No. 1*, 472 N.W.2d 114, 116 (Minn.1991). The court today concludes collateral estoppel bars an employee from demonstrating he was qualified for the position from which he was discharged, as required in a claim alleging discrimination, because the issue of his fitness for the position was already determined in his termination hearing under Minn.Stat. § 125.12(8), (9) (1992). A determination that an employee is objectively unfit for a position is not identical to a determination on whether an employee can make out a prima facie case of discrimination.

The court cites *Hubbard v. United Press Int'l*, 330 N.W.2d 428, 442 (Minn.1983), for the proposition that proof of racial discrimination in the workplace requires a showing that the plaintiff was qualified for the position. Standing alone, however, that showing does not shed any light on whether an employer has engaged in impermissible disparate treatment discrimination. That is because "[t]he crux of a disparate treatment claim involving an employer's decision to discharge an employee is that the employer is treating that employee less favorably than others on the basis of an impermissible classification." *Hubbard*, 330 N.W.2d at 442. Thus, an employee with a discrimination claim should only be required to show he was as qualified as other employees in a similar position who were not members of a protected class and who were not discharged for similar conduct. *Shockency v. Jefferson Lines*, 439 N.W.2d 715, 719 (Minn.1989) ("The test [for establishing a prima facie case of employment discrimination] may be met by demonstrating that a minority employee was discharged and a non-minority employee was retained under apparently similar circumstances." (citation omitted)). Otherwise, an employer could require protected class members to meet objectively higher qualification standards than nonmembers of the protected class—a result directly in conflict with the goals of anti-discrimination legislation.

In this case, the hearing examiner did not consider the identical issue to that raised as a

---

1. The record before us does not provide information one way or the other as to whether the employee here has a valid disparate treatment discrimination claim. Indeed, if the claim was reviewed, it might well be determined to be meritless.

part of the employee's prima facie case of discrimination. The hearing examiner was only asked to determine whether the employee was objectively unfit to be a teacher due to his misconduct. The hearing examiner was not asked, and did not answer the question of whether the employee was as qualified to teach as other teachers who were not members of a protected class and who were not discharged for similar conduct.[2]

The question left unanswered here is whether the school board applied the same criteria to all teachers. Does the school district dismiss all abusive teachers or only those abusive teachers who are members of a protected class? Clearly, teacher abuse of any student is unacceptable. It is equally unacceptable, however, for an employer to select for discipline only those teachers who are members of a protected class.

In *Graham* we said that collateral estoppel is " 'a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom the estoppel is urged.' " *Id.* at 120 (quoting *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn.1988)). The doctrine's flexibility should not be used to frustrate justice by allowing claims of discrimination to escape judicial review. Based on today's ruling, an employee who has been subjected to blatant discrimination would be forever precluded from having his or her discrimination claim reviewed.

Collateral estoppel should not be used if to do so would frustrate the just treatment of others. The court's decision also deprives a person of judicial review where that person failed to meet the qualifications for the position solely because of the employer's discrimination, a situation distinct from Villarreal's. Further, beyond the interests of the complainant, an independent review of the discrimination claim protects the interests of all of the employer's employees because they also have an interest in a work environment free from discrimination. A "sensible and fair application of collateral estoppel" would not result in foreclosing review of a disparate

2. Indeed, under Minn.Stat. § 125.12(8), (9) (1992), the hearing examiner was prohibited

treatment discrimination claim. *Graham,* 472 N.W.2d at 120.

GARDEBRING, Justice (dissenting).

I join in the dissent of Justice Page.

from considering issues raised by Villarreal's discrimination claim.