*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0642**

In the Matter of the Welfare of the Children of: K. E. L. and J. L. W., Parents

**Filed October 27, 2014
Affirmed
Rodenberg, Judge**

McLeod County District Court
File Nos. 43-JV-13-163, 43-JV-12-108

Scott L. Nokes, Glencoe, Minnesota (for appellant)

Tiffany R. Doherty-Schooler, Glencoe, Minnesota (for respondent J.L.W.)

Michael Junge, McLeod County Attorney, Amy E. Olson, Assistant County Attorney, Glencoe, Minnesota (for respondent McLeod County Social Services)

Thomas J. Nolan, Jr., Minneapolis, Minnesota (for respondent guardian ad litem)

Considered and decided by Peterson, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant-mother K.E.L. challenges the district court's termination of her parental rights, arguing that (1) a second petition for termination of parental rights, filed after the district court's denial of an earlier such petition, should have been dismissed based on collateral estoppel principles, and (2) respondent McLeod County failed to make reasonable efforts to reunify her with her children. We affirm.

**FACTS**

On May 2, 2012, appellant mother K.E.L. was video recorded suffocating her infant child, C.A.W., at Children's Hospital in St. Paul. Mother pinched the child's nose and forcibly held his mouth shut. The child struggled until he eventually went limp. Mother then calmly called a nurse for assistance. On May 8, 2012, respondent McLeod County filed a petition, alleging that C.A.W. was a child in need of protection or services (CHIPS). At the CHIPS Admit/Deny Hearing, respondent father J.L.W., who until then had been residing with mother and the couple's two children, was awarded temporary physical and legal custody of C.A.W. and C.M.W. (age 3). Both children have resided with J. L.W. since.[1]

A petition for termination of mother's parental rights (TPR petition) was filed on June 25, 2012. Testimony at the trial on that petition revealed that mother has factitious disorder and the district court found that the disorder was likely treatable. Despite the district court's finding that mother had inflicted egregious harm on C.A.W., the district court concluded that, because mother could successfully complete treatment for the disorder in the reasonably foreseeable future, termination was not in the best interests of the children. The district court concluded that both children were in need of protection and services. Services were ordered, including a psychological evaluation of mother to

---

[1] Mother was charged with three criminal counts in Ramsey County, resulting from the May 2 incident, and was convicted of felony domestic assault by strangulation in violation of Minn. Stat. § 609.2247, subd. 2 (2012). She served a jail sentence of 120 days.

determine the appropriate next steps for her treatment and for a case plan in the best interests of the children.

Thereafter, Dr. Jane McNaught evaluated mother. Her report questioned the likelihood that mother could be treated, how successful treatment would be, and how long treatment might take. Following the receipt of Dr. McNaught's report, respondent-county filed a second TPR petition. Mother moved to dismiss the petition, arguing that collateral estoppel precluded relitigating the issue of terminating her parental rights. The district court denied the motion, concluding that, although the factors identified by *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988), might support the application of collateral estoppel, the doctrine should not be applied where doing so would be inconsistent with the health, safety, and best interests of the children, which are of paramount importance.

At the second TPR trial, all parties stipulated that mother had been found by the district court in the first trial to have inflicted egregious harm on C.A.W. The sole issue for trial was identified as the best interests of the children. After trial, the district court granted the TPR petition as to both children. This appeal followed.

**D E C I S I O N**

Mother argues that the district court erred in declining to apply collateral estoppel to dismiss the second TPR petition and, alternatively, that respondent-county failed to provide reasonable efforts to reunify her with her children.

Whether collateral estoppel applies in a case presents a mixed question of law and fact, which we review de novo. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn.

3

2004). "Once the reviewing court determines that collateral estoppel is available, the decision to apply collateral estoppel is left to the district court's discretion," which decision we review for an abuse of discretion. *In re Estate of Perrin*, 796 N.W.2d 175, 179 (Minn. App. 2011) (quotation omitted). "The district court is vested with broad discretionary powers when deciding juvenile-protection matters." *In re Welfare of Child of S.S.W.*, 767 N.W.2d 723, 733 (Minn. App. 2009) (quotation omitted).

Four requirements have been identified by Minnesota courts as preconditions for the application of collateral estoppel: "(1) the issue [is] identical to one in a prior adjudication; (2) there was [in the earlier adjudication] a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Johnson*, 420 N.W.2d at 613. Those conditions are necessary, but not sufficient to support application of the doctrine. Collateral estoppel is not to be rigidly applied when "application would work an injustice on the party against whom estoppel is urged." *Id.* at 613-14. Courts will not apply collateral estoppel when doing so would contravene public policy. *AFSCME Council 96 v. Arrowhead Reg'l Corr. Bd.*, 356 N.W.2d 295, 299 (Minn. 1984); *see also Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn. App. 2009) (stating in addition to the four-factor test that "a court applying collateral estoppel must be convinced that its application is fair"); *Maschoff v. Leiding*, 696 N.W.2d 834, 838 (Minn. App. 2005) (holding that res judicata and collateral estoppel have limited application to family law matters). And "[t]he paramount consideration in all juvenile

4

protection proceedings is the health, safety, and best interests of the child." Minn. Stat. § 260C.001, subd. 2(a) (2012).

In its order denying mother's motion to dismiss, the district court stated that, "although the necessary elements for collateral estoppel may be present, in this particular situation the doctrine should not be applied" and that "[m]echanically applying the doctrine of collateral estoppel to [the issue of the best interests of the children] would unfairly mean that the parties and children would always be subject to an established fact that the mother's illness is treatable, that such treatment has a reasonable chance of success and that it can be completed within the reasonably foreseeable future." The report and testimony of Dr. McNaught, not available at the first trial, contradicted testimony from the first trial concerning mother's condition and whether it was amenable to treatment within the reasonably foreseeable future. In light of this new information, the district court concluded that application of collateral estoppel was not in the best interests of the children, stating:

> Child protection matters are oftentimes ongoing dynamic proceedings in which knowledge of the facts and circumstances may change such that the parties and court must continually reexamine what actions are in the best interests of the child. Application of the collateral estoppel doctrine is particularly problematic where, as here, it involves fact issues of what will happen in the future.

At the intersection of collateral estoppel and the best interests of the child, which is the paramount consideration here, the district court is uniquely situated to make the necessary determination concerning whether to apply collateral estoppel. And, on this record, the district court acted within the scope of the discretion entrusted to it in

5

declining to apply collateral estoppel. We see no error in the district court's denial of mother's motion to dismiss the second TPR petition.

Mother argues for a rule of law that collateral estoppel *must* be applied in child welfare cases when all four *Johnson* factors are met, unless something *attributable to the parent* has changed since the earlier determination. Mother is arguing that we create a new rule of law. "This court, as an error correcting court, is without authority to change the law." *Lake George Park, L.L.C. v. IBM Mid-Am. Emps. Fed. Credit Union*, 576 N. W.2d 463, 466 (Minn. App. 1998), *review denied* (Minn. June 17, 1998). "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987), *review denied* (Minn. Dec. 18, 1987). We apply existing law, which as discussed above, entrusts to the district court's discretion whether to apply collateral estoppel. And on these facts, the district court acted within the discretion afforded it under existing law.

Moreover, and even if we were to enunciate the proposed new rule of law, doing so would not likely change the outcome. We note that mother had eight months after the first trial and before the filing of the second TPR petition to seek treatment, and she failed to remediate or treat her underlying factitious disorder. The record reveals no requests by mother to the district court that her condition be treated or that the county should locate or pay for such treatment. She apparently failed to do anything about her condition from the end of the first trial to the filing of the second petition. And her inaction in light of the disturbing facts of this case, is attributable to mother.

6

Mother also argues that respondent-county's second TPR petition should have been dismissed because reasonable efforts were not made to reunite mother with her children after the first TPR trial. As a general rule, and after a child is found to be in need of protection or services, the district court "shall ensure that reasonable efforts . . . by the social services agency are made to prevent placement or to eliminate the need for removal and to reunite the child with the child's family at the earliest possible time." Minn. Stat. § 260.012(a) (2012). But reasonable efforts are not required "upon a determination by the [district] court that a petition has been filed stating a prima facie case that . . . the parent has subjected a child to egregious harm." Minn. Stat. § 260.012(a)(1) (2012). Egregious harm is in turn defined by statute as an "infliction of bodily harm to a child . . . which demonstrates a grossly inadequate ability to provide minimally adequate parental care." Minn. Stat. § 260C.007, subd. 14 (2012).

It is undisputed that, at the first TPR trial, the district court found that mother inflicted egregious harm on C.A.W. That finding was not appealed. The parties stipulated before the second trial that egregious harm had been determined and that the best interests of the children was identified as the only issue in dispute. Mother claims she raised the issue of whether the county provided reasonable efforts to reunify in a posttrial letter to the district court. But the reasonable efforts question was not presented to the district court for a decision based on the pretrial stipulation that best interests was the only disputed issue. Generally, an appellate court considers only "those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation

7

omitted). Having tried the case to the district court on only the issue of best interests, mother may not now ask, for the first time on appeal, that we address the reasonable-efforts issue.

Moreover, and even if the reasonable efforts issue were to have been preserved, the district court found at the first trial that mother had inflicted egregious harm on C.A.W. That finding was not appealed and the children were found to be in need of protection or services. Because it was proved at the first trial that mother inflicted egregious harm upon C.A.W., reasonable efforts to reunify were no longer required, and respondent-county was relieved of the obligation to reasonably attempt to reunify.

In sum, because mother was filmed suffocating her child, which the district court previously found to constitute the infliction of egregious harm on the child, the district court acted within its discretion in declining to apply collateral estoppel where applying the doctrine would be inconsistent with the health, safety and welfare of children. Mother also failed to preserve the issue of whether respondent-county was required to make reasonable efforts to reunify her with the children, and the county was, in any event, relieved of that obligation by the previous and unappealed judicial determination of egregious harm.

**Affirmed.**