**Daniel G. MANDICH,**
**Petitioner, Appellant,**

v.

**NORTH STAR PARTNERSHIP, a/k/a**
**Minnesota North Stars, Respondent.**

**No. C4–89–1468.**

Court of Appeals of Minnesota.

Jan. 16, 1990.

Review Denied March 16, 1990.

Michael J. Healey, Michael J. Healey, P.A., St. Paul, for appellant.

Timothy D. Kelly, Diane M. Helland, Kelly & Berens, P.A., Minneapolis, for respondent.

Heard, considered and decided by SCHUMACHER, P.J., and CRIPPEN and FLEMING,* JJ.

## OPINION

SCHUMACHER, Judge.

Daniel G. Mandich in this appeal challenges the trial court's denial of his petition to set aside an arbitration award and denial of his motion for summary judgment.

### FACTS

Daniel G. Mandich (Mandich) first signed a player contract with the Minnesota North Stars (North Stars) in July, 1982 and a second one-year contract in July, 1983. On January 16, 1984, Mandich sustained what turned out to be a career-ending injury to his knee and played in no hockey games until March, 1985. During this rehabilitative period, in August, 1984, Mandich signed a third one-year contract.

In May, 1985, two months after Mandich returned to the line-up, Mandich's agent, Bill Waters, (Waters) began negotiating a new contract for Mandich with North Stars general manager, Lou Nanne (Nanne). Waters and Nanne negotiated a new two year contract which provided for a salary increase. This was a Standard Player's Contract (SPC), and contained the following two provisions:

> The Club and the Player further agree that in case of dispute between them, except as to the compensation to be paid to the Player on a new contract, the dispute shall be referred within one year from the date it arose to the President of the League, as an arbitrator and his decision shall be accepted as final by both parties, unless, and to the extent that, other arbitration procedures are provided in any Collective Bargaining Agreement between the member clubs of the League and the NHLPA to cover such dispute.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

It is severally and mutually agreed that the only contracts recognized by the President of the League are the Standard Player's Contracts, Player's Termination Contracts, Player's Option Contracts, Post–Option Year Termination Contracts, Standard Contracts (Corporate), Standard Termination Contracts (Corporate), Standard Option Contracts (Corporate) and Post–Option Year Termination Contracts (Corporate) which have been duly executed and filed in the League President's office and approved by him (or his designated representative), *and that this Agreement contains the entire agreement between the Parties and there are no oral or written inducements, promises or agreements except as provided herein.* (emphasis added)

They also orally agreed that if Mandich's knee forced him to retire from playing hockey and he was able to collect under the terms of a disability insurance policy provided for the players by the North Stars, then, and in that event, the North Stars would not be obligated under the contract to pay his salary. Mandich was not present at this meeting which is the custom when a hockey player's agent was negotiating a contract. The oral agreement was not reduced to writing.

Under the new contract, Mandich was only able to play in 3 games at the beginning of the 1985–86 season. After consulting with the team doctors, as well as his own personal physician, he was forced to retire from hockey because of the injury. Mandich was eligible for disability benefits pursuant to the disability policy and subsequently collected $175,000 under the policy provided by the North Stars.

In November of 1985, Mandich met with Nanne to advise him of his decision to retire from hockey and at that time Nanne requested that Mandich sign a waiver which provided as follows:

As of the date indicated below, it is hereby agreed to by the Northstar Hockey Partnership (Minnesota North Stars) and Dan Mandich, that should said player file a disability claim for the injury he incurred in January of 1984, the Minnesota North Stars will not be liable to Dan Mandich for the contract terms as stated in his contract dated May 15, 1985, for the years 1985–86, 1986–87 and 1987–88.

Mandich signed the waiver after conferring with Waters on the telephone. Waters advised Mandich to sign the waiver.

Thereafter, Mandich made a claim for his salary under the contract and in February of 1987, he requested that his claim be submitted to arbitration. Under the terms of the collective bargaining agreement between the National Hockey League Player's Association and the National Hockey League, all disputes to enforce a contract and to interpret its terms are to be submitted to the President of the National Hockey League for binding arbitration. The collective bargaining agreement provides that:

Any dispute involving a player, the Association and/or a Club concerning * * * the interpretation or application of the League Constitution or By–Laws, one of the Approved Standard Form Contracts or a League Rule should be referred exclusively to the President of the League or his designated representative for final and binding determination subject to any right of appeal provided for in the League Constitution or By–Laws.

Mandich's grievance was heard by the National Hockey League President John A. Ziegler, Jr. (Ziegler), who found that Mandich was not entitled to compensation under the 1985–86 contract.

Ziegler found in part as follows:

It is crystal clear from the submission and the testimony that 1) the duly authorized agent of Mandich, Waters, agreed with the duly authorized agent of the North Stars, Nanne, that the 1985 contract would not be effective if Mandich was physically unable to perform; 2) Mandich was physically unable to perform by reason of a career-ending injury occurring in January of 1984.

Mandich brought a petition before the district court to vacate the arbitration award and also a motion for summary judgment based on his claim for his salary under the contract. Mandich claims that

the arbitrator exceeded his authority by recognizing the validity of the oral agreement and further, that the arbitrator was biased in his decision. The trial court denied both motions and this appeal followed.

### ISSUES

1. Did the arbitrator exceed his authority by recognizing the validity of an oral agreement?

2. Was the arbitrator biased in his decision?

### ANALYSIS

■ On appeal from summary judgment, this court must determine whether there are any genuine issues of material fact or whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota*, 426 N.W.2d 425, 427 (Minn. 1988).

■ The arbitrator is the final judge of both law and facts. *State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977), cited in *In re Metropolitan Airports Commission v. Metropolitan Airports Police Federation*, 443 N.W.2d 519, 524 (Minn. 1989). A court may vacate an arbitrator's award if the award exceeds the arbitrator's powers. Minn.Stat. § 572.19, subd. 1(3) (1988). If the arbitrator's decision is challenged on the merits, the decision must be upheld if the award draws its essence from the collective bargaining agreement. *Ramsey County v. AFSCME, Council 91, Local 8*, 309 N.W.2d 785, 790 (Minn.1981).

> An arbitrator's award does "draw its essence from the collective bargaining agreement" so long as the interpretation can in some rational manner be derived from the agreement, "viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award."

*Id.* at 792 (quoting *Amoco Oil Co. v. Oil, Chemical and Atomic Workers*, 548 F.2d 1288, 1294 (7th Cir.1977), *cert. denied* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977)).

This court must decide whether the trial court erred by holding that the arbitrator did not exceed his powers and that the award was in essence drawn from the bargaining agreement.

■ 1. Appellant contends that the trial court erred by holding that the arbitrator did not exceed his powers by enforcing the oral agreement between Nanne and Waters. The arbitrator is permitted to consider aspects of the parties' relationship which are not typically cognizable in a court of law, including the practices of the industry. *Id.*, 309 N.W.2d at 791. (citation omitted)

> The contract is not, however, the sole evidence of the parties' will; the conduct of the parties is likewise indicative of their mutual intent. Therefore, the question before an arbitrator faced with conflicting contractual language and practice is basically an evidentiary one, focusing on "which evidence is most persuasive and therefore controlling, and not on whether the practice should be considered at all."

*Id.*, 309 N.W.2d at 791 (citation omitted).

■ In *Ramsey County*, the arbitrator recognized an oral agreement between the county and the union and on appeal, the court held that the arbitrator did not exceed his powers by making an award "based upon the past practice of the parties where the practice conflict[ed] with the clear and unambiguous language of the parties' written agreement." *Id.*, 309 N.W.2d at 789.

There is no disagreement that the arbitrator in the instant case heard evidence of the practice in the National Hockey League of negotiating terms not found in the Standard Player's Contract. The arbitrator here looked to the oral agreement negotiated by Waters and Nanne as the more persuasive indicia of the parties' intent, and found that the oral agreement was controlling. We conclude, as the trial court did, that the arbitrator did not exceed his powers in resolving the contract dispute. Clearly, Ziegler went beyond the four corners of the Standard Player's Contract in

deciding the matter, but it is also clear that he was within his powers to do so.

In the final analysis, it is the arbitrator's construction of the parties' agreement that is bargained for, not the court's interpretation. *Id.*, 309 N.W.2d at 793.

2. Appellant further challenges the arbitration award on the grounds of bias and partiality on the part of Ziegler. We conclude that the trial court did not err in finding that Ziegler was free from bias and partiality.

## DECISION

The trial court did not err in holding that the arbitrator did not exceed his powers, did not err in finding that the award was in essence drawn from the collective bargaining agreement, and did not err in finding that the arbitrator was free from bias and partiality in making his decision.

Affirmed.

CRIPPEN, Judge, dissenting.

Appellant Daniel Mandich suffered his injury in January 1984. He attempted to rehabilitate his knee under a one-year contract signed in August 1984, and played some games in March 1985 before suffering a wrist injury. In May 1985, his agent negotiated a new two-year contract. Mandich played a few games in the Fall of 1985 before he reinjured his knee and ended his career. Respondent claims Mandich's agent orally agreed that the May 1985 contract would not be effective unless Mandich played at least 20 games of the 1985–86 season, rendering him ineligible for disability insurance benefits. Mandich was not told of the alleged side agreement until a meeting with respondent's president, Lou Nanne, at which he told Nanne of his decision to retire.

Judicial power to review arbitration awards is limited. However, the court "shall" vacate an arbitration award when the arbitrator has exceeded his powers. Minn.Stat. § 572.19, subd. 1(3) (1988). Accordingly, the supreme court has explained the limits on an arbitrator's power:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. * * * his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Ramsey County v. AFSCME Council 191, Local 8*, 309 N.W.2d 785 (Minn.1981) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). A court may vacate the award when the arbitrator shows "manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop." *Id.* at 792 (quoting *Amoco Oil Co. v. Oil, Chem. and Atomic Workers*, 548 F.2d 1288, 1294 (7th Cir.1977), *cert. denied* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977)).

Absent suspension of the rule of law for the sake of the North Stars and the NHL, we should vacate the league President's arbitration award. The essence of the award is not drawn from the contract, and the decision shows manifest disdain for the agreement and league rules that bind the parties.

Paragraph 5(d) of the contract provides: It is also agreed that if the player * * * is disabled and unable to perform his duties as a hockey player by reason of an injury sustained during the course of his employment * * * *he shall be entitled to receive his remaining salary* due in accordance with the terms of this contract * * *.

(emphasis added). This section also provides that consideration for continued salary payments is the player's agreement to waive all further claims against the team. Section 9.08 of the collective bargaining agreement contains the same language. These provisions, which contain no exceptions, guarantee a player in appellant's position the right to his contracted salary no matter what added benefits he receives un-

der a disability insurance policy. Arbitrator Ziegler chose to ignore agreements stated and restated in contracts governing the arbitrated dispute.[1]

The arbitrator also ruled that, under the oral agreement, the 1985 contract never came into effect. This reasoning requires overlooking contractual obligations binding the parties and the arbitrator. Section 9.04 of the collective bargaining agreement prohibits a player from playing without a contract, and league by-law 2.1 states that a contract exists as soon as signed by the player. Mandich signed the 1985 contract, played several games, and received over $30,000 in salary. Under these circumstances, this reasoning is wholly illegitimate.

The arbitrator also ignored the merger agreement found in both the contract and the collective bargaining agreement. His reasoning in so doing is unsupported by accepted principles of contract construction. Respondent claims that consideration of the oral agreement follows accepted uses of parol evidence. However, given the provisions stating that the contract did exist and requiring it to exist before play, the only possible use of this parol evidence was to contradict express written terms. This shows disregard of both the contract language and accepted principles of contract construction.[2]

In refusing to vacate this award, the district court held that past practices permitted the arbitrator to look past the contract provisions. In *Ramsey County*, the supreme court noted that five qualities distinguish a binding past practice from a course of conduct without evidentiary significance.[3] None of these qualities have been shown to exist here. Specifically, the requirement of mutuality is wholly absent, as there was no indication that Mandich had ever been a party to this type of agreement before. In addition, the court's re-

liance on past practices as a basis for affirming the award is illegitimate. The arbitrator, not the court, determines whether past practices have evidentiary significance. *Id.* at 793 n. 10.

As a further basis for the award, the arbitrator claimed that Mandich was only entitled to compensation under the contract in effect at the time he was first injured, because no consideration was given for continued payment. This reasoning ignores other language agreed to by the parties. The contract states that the consideration for the injured player receiving the full salary under the contract is his waiver of all further claims against the team.

The arbitrator's disregard of provisions governing the parties' relationship is particularly serious in light of the fact that he is president of the National Hockey League. Section 6.3(a) of the NHL Constitution requires the league president to uphold league by-laws. The award here contravenes the by-laws, as well as the collective bargaining agreement and the contract. As a result, the arbitrator erroneously exceeded his powers when he rendered this decision. "When the arbitrator's words manifest an infidelity to [his lawful] obligation, courts have no choice but to refuse enforcement of the award." *Ramsey County*, 309 N.W.2d at 790 (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d 142).

I respectfully dissent.

---

1. Respondent does not contend and neither the arbitrator or the trial court found that appellant was bound by a waiver accepted by him in November 1985.

2. League by-law 2.3 requires players and teams to use one of the standard form contracts, and by-law 2.5 provides that the club and the player

cannot change these contracts. These provisions strengthen the merger clause's effect.

3. They are: clarity and consistency, longevity and repetition, acceptability, a consideration of underlying circumstances, and mutuality. *Ramsey County*, 309 N.W.2d at 788 n. 3.