Daniel G. **MANDICH**, Appellant,

v.

William W. **WATTERS**, Appellee.

No. 91–2483.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1991.

Decided July 20, 1992.

Michael Healey, St. Paul, Minn. (argued), for appellant.

Laurence Ulrich, Minneapolis, Minn. (argued), for appellee.

---

* The HONORABLE FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

Before BEAM and LOKEN, Circuit Judges, and KAUFMAN,* Senior District Judge.

LOKEN, Circuit Judge.

Retired professional hockey player Daniel G. Mandich appeals the district court's [1] summary judgment dismissing Mandich's suit against his former agent, William W. Watters. Mandich sued Watters for secretly negotiating an illegal side agreement with the Minnesota North Stars that deprived Mandich of post-retirement salaries under his 1985 player's contract. The district court held that this claim was collaterally estopped by a National Hockey League (NHL) arbitrator's resolution of Mandich's prior contract claim against the North Stars. We affirm.

## I.

Mandich severely injured his right knee during a North Stars game in January 1984. He signed a new one-year contract in August 1984, while attempting to rehabilitate the knee. He played in a few games near the end of the 1984–85 season and hoped to resume his hockey career in the fall of 1985.

In negotiating Mandich's contract for the 1985–86 season, Watters and North Stars General Manager Lou Nanne knew that Mandich would retire that fall if his knee injury proved disabling, and that Mandich would collect $175,000 in NHL disability insurance benefits if he retired before playing twenty post-injury NHL games. However, the NHL Standard Player's Contract provided that a player "disabled ... by reason of an injury sustained during the course of his employment as a hockey player ... shall be entitled to receive his remaining salary due in accordance with the terms of this contract." Therefore, when Mandich and the North Stars signed a two-year contract on May 15, 1985, calling for a salary of $105,000 in the first year and $120,000 in the second (the "1985 Contract"), Watters and Nanne made an oral

1. The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota.

side agreement—if Mandich retired early enough to receive the disability benefits, the North Stars would have no further salary obligation under the 1985 Contract.

The 1985 Contract was on the Standard Player's Contract form, as required by the collective bargaining agreement between the NHL and the NHL Players Association. Paragraph 21 of that form provided, "this Agreement contains the entire agreement between the Parties and there are no oral or written inducements, promises or agreements except as provided herein." Nevertheless, Watters and Nanne later testified that side agreements were a common NHL practice. Watters also testified that the 1985 Contract was a good deal for Mandich, because he would get $175,000 if his injury forced him to retire before playing twenty games, and he would have a two-year contract at attractive salaries if he was able to resume his career.

In the fall of 1985, Mandich participated in training camp, played sparingly in several early season games, and then was sent to a minor league team where his knee could be rigorously tested. Unfortunately, the knee performed poorly. On November 19, after team doctors told him his injury was disabling, Mandich went to Nanne's office to announce his decision to retire. Nanne asked Mandich to sign a "Letter of Agreement" memorializing the side agreement. Mandich objected, claiming Watters had never told him of such an arrangement. Nanne telephoned Watters, who told Mandich over a speakerphone that this was indeed part of his contract. Mandich reluctantly signed the letter agreement but then filed a grievance to recover his full 1985 Contract salaries.

Mandich's grievance was submitted to NHL President John Ziegler for binding arbitration, as required by the collective bargaining agreement and paragraph 19 of the 1985 Contract. After receiving documentary evidence and conducting a hearing, Ziegler issued his eight page written decision. Without deciding whether the

side agreement was binding and enforceable, Ziegler ruled in favor of the North Stars, concluding that the parties had agreed "the 1985 contract would not be effective if Mandich was physically unable to perform"; that Mandich was physically unable to perform "by reason of a career-ending injury occurring in January of 1984" for which he received $175,000 in disability benefits; that the 1985 Contract "never came into effect" because "[t]here was a total failure of consideration on the player's part as well as a breach of an essential condition, viz., failure to report in good physical condition"; and that the collective bargaining agreement did not require full pay out of the post-injury 1985 Contract.

Mandich then petitioned a Minnesota state court to vacate the arbitration award, arguing that Ziegler was not impartial and had exceeded his powers. *See* Minn.Stat. § 572.19, Subd. 1(2), (3). The state trial court upheld the award. It concluded that the oral agreement between Watters and Nanne was valid, an issue that Ziegler had avoided, and that Ziegler was not biased. It also upheld Ziegler's interpretation of the 1985 Contract:

> The arbitrator concluded that the presence of petitioner's injury precluded him from fulfilling his obligations under the terms of the agreement. Again, this court cannot conclude that the arbitrator exceeded his authority in finding the terms of the agreement as he did or applying those terms to the undisputed facts before him.[2]

On appeal, the Minnesota Court of Appeals affirmed, upholding the side agreement and summarily rejecting Mandich's argument that Ziegler was biased. A dissent harshly criticized Ziegler's contract analysis as "wholly illegitimate" and concluded that Ziegler had exceeded his authority as an arbitrator. *Mandich v. North Star Partnership*, 450 N.W.2d 173 (Minn.Ct. App.1990). The Minnesota Supreme Court declined further review.

**2.** In its conclusion, the court also commented, "Were this court free to explore the relative merits of the parties' positions in a *de novo*

fashion, the application of basic principles of contract law would likely leave the petitioner in a much different position."

Mandich then commenced this suit, seeking to recover the unpaid salaries provided in the 1985 Contract on the ground that Watters breached his duty as agent by negotiating an illegal and unauthorized side agreement. Watters, a resident of Canada, removed. Mandich then filed an amended complaint which pleaded a violation of the National Labor Relations Act. However, Mandich has argued no issue of federal law on appeal, and both parties have treated this as a diversity case in which Minnesota law governs.

The district court granted Watters's motion for summary judgment, concluding that the arbitrator's determination that the 1985 Contract never came into effect is binding on Mandich and precludes his claim for salaries provided in that contract. On appeal, Mandich concedes that his claim against Watters depends upon the enforceability of the 1985 Contract and contends that the district court erred in applying collateral estoppel to resolve this issue against him.

## II.

■ Federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). In Minnesota, collateral estoppel precludes a party from relitigating a legal or factual issue that was actually litigated in a prior proceeding and was essential to the judgment rendered. *See Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn.1978). The party invoking collateral estoppel must show: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."

*Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984).

■ It is now settled in Minnesota that an arbitration award is a prior adjudication for collateral estoppel purposes. *See Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 651 (Minn.1990). However, no reported Minnesota case has discussed how to apply to arbitration awards the complex rules that define the collateral estoppel effect of judicial determinations. Equating the arbitrator's award with a lower court's judgment, Mandich launches a novel two-pronged attack on the district court's collateral estoppel analysis. Although arbitrator Ziegler squarely decided the crucial question against him, Mandich argues, that decision may not be given collateral estoppel effect, first, because the Minnesota trial court affirmed on multiple grounds no one of which was "essential to the judgment," and second, because the Minnesota Court of Appeals affirmed on an alternative ground, the validity of the Watters/Nanne side agreement.

The fatal flaw in these arguments is their initial premise, that an arbitration award is like a trial court decision for collateral estoppel purposes. Mandich is invoking principles derived from the nature of appellate review of trial court decisions. *See* Restatement (Second) of Judgments § 27, comments i, o. The general rule is that, "if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court." *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir.1981); *see Dow Chemical v. U.S. Environmental Protection Agency*, 832 F.2d 319, 323 (5th Cir. 1987).[3] The rule is based upon the fact that "a 'full and fair opportunity to litigate' includes the right to appeal an adverse decision." *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990).

---

**3.** The general rule is not followed in all jurisdictions, *see Markoff v. New York Life Ins. Co.*, 530 F.2d 841, 842 (9th Cir.1976); 46 Am.Jur.2d *Judgments* § 463 (1969), and we have some doubt whether Minnesota would follow it, *see Bolsta v.*

*Bremer*, 212 Minn. 269, 3 N.W.2d 430, 431 (1942) ("Even where an appeal has been taken, the matters determined by the judgment remain rés judicata until the judgment is reversed.").

■ Mandich's attempt to apply this rule to the state court decisions upholding Ziegler's award overlooks the limited scope of judicial review of an arbitrator's decision. Minnesota law favors arbitration awards and by statute severely limits the grounds upon which a reviewing court may vacate an award. "[A]n arbitrator, in the absence of any agreement limiting his authority, is the final judge *of both law and fact." State v. Minnesota Teamsters Local No. 320*, 316 N.W.2d 542, 544 (Minn.1982) (emphasis added). The reviewing court does not review the merits of the arbitrator's decision; indeed, "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Minn.Stat. § 572.19, Subd. 1.

■ Thus, Mandich's arguments that Ziegler's failure-of-consideration determination does not deserve preclusive effect because the Minnesota trial court affirmed upon multiple grounds, and because the Court of Appeals affirmed on an alternative ground, must fail. Mandich's right to appeal Ziegler's award did not include the right to have the arbitrator's interpretation of the 1985 Contract reviewed on the merits, either by the trial court or the Court of Appeals. The state courts' lengthy discussion of the merits of Ziegler's decision was in response to Mandich's argument that Ziegler was partial because "no rational basis exists for [his] determination." 450 N.W.2d at 177. Applying this "rational basis" standard while reserving judgment as to its propriety, the district court declined to vacate the award, and the Court of Appeals affirmed. This was not the equivalent of full-fledged appellate review on the merits. "[O]nce arbitrability is established, the role of the judiciary does not encompass a reexamination of the merits of the case." *Ramsey County v. AFSCME*, 309 N.W.2d 785, 790 (Minn.1981).

In these circumstances, we agree with the district court that the only relevant question is whether the failure-of-consideration issue was squarely addressed by the arbitrator and was essential to his decision. It clearly was. Although Ziegler's opinion perhaps suggests a predisposition toward upholding the side agreement, he expressly declined to do so. The sole ground for his award was that the 1985 Contract never came into existence. That award was upheld upon judicial review. If arbitration awards are to be given meaningful collateral estoppel effect, as the Minnesota Supreme Court has declared, then relitigation of Ziegler's core determination that the 1985 Contract is unenforceable must be precluded.

Mandich also argues that he was denied a "full and fair opportunity" to litigate Ziegler's failure-of-consideration theory because neither party briefed it nor argued it at the arbitration hearing. The Minnesota courts have found that a party to a prior arbitration was denied a "full and fair opportunity" to litigate an issue when he had "no meaningful participation" in the proceeding, *Houlihan v. Fimon*, 454 N.W.2d 633, 637 (Minn.Ct.App.1990), or the decision was based "on only part of the pertinent facts and parties." *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 614 (Minn.1988). These exceptions obviously do not apply here. Mandich invoked arbitration seeking to enforce the salary provisions of the 1985 Contract. His claim obviously put at issue the existence and enforceability of that contract. The North Stars' theory at the hearing was that Mandich failed to live up to his bargain because he was physically unable to play hockey during the contract term. Ziegler's failure-of-consideration analysis relied on the evidence submitted by both parties. We reject the contention, for which Mandich cites no authority, that the issue was not fairly litigated because Ziegler relied upon an interpretation of the contract that was not specifically urged by either party to the arbitration.

Finally, Mandich argues that giving Ziegler's award preclusive effect "would work an injustice on the party against whom estoppel is urged." *Johnson*, 420 N.W.2d at 614. However, we find no such injustice in this case. Mandich agreed to the binding arbitration he now seeks to avoid in the very contract whose salary provisions he would enforce against Watters. Mandich

was represented by counsel at the arbitration proceeding, the arbitrator ruled squarely against him on the question here at issue, and two reviewing courts declined to vacate that award. In these circumstances, we think the governing principle was stated by the Minnesota Supreme Court in *Aufderhar*, 452 N.W.2d at 652-53:

> Because it is clear Aufderhar was afforded "a full and fair opportunity to be heard" on the damage issue, we perceive no reason to deny the application of estoppel to prevent relitigation of that issue. To the contrary, to permit it here is entirely consistent with the public policy underlying this court's traditional encouragement of alternative forms of dispute resolution, as well as policies designed to promote judicial efficiency.

For the above reasons, the judgment of the district court is affirmed.