# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3548MN

_____

| | | |
|---|---|---|
| U.S. West Financial Services, Inc., a Colorado corporation, | * * * | |
| | * | |
| Appellant, | * * | |
| | * | |
| v. | * * | |
| | * | |
| Buhler, Inc., a Minnesota corporation; Buhler International, Ltd., a Swiss corporation, | * * * | |
| | * | On Appeal from the United |
| Appellees, | * | States District Court |
| | * | for the District of |
| ---------------------------- | * | Minnesota. |
| | * | |
| U.S. West Financial Services, Inc., as assignee of Reuter Recycling of Florida, Inc., a Florida corporation, | * * * | |
| | * | |
| Appellant, | * * | |
| | * | |
| v. | * * | |
| | * | |
| Buhler, Inc., a Minnesota corporation; Buhler Brothers, also known as Buhler International, Ltd., | * * * | |
| | * | |
| Appellees, | * | |

```
----------------------------          *
                                      *
U.S. West Financial Services, Inc.,   *
as assignee of Reuter Recycling of    *
Florida, Inc., a Florida corporation, *
                                      *
              Appellant,              *
                                      *
        v.                            *
                                      *
Buhler, Inc., a Minnesota corporation; *
Buhler Brothers, also known as        *
Buhler International, Ltd.,            *
                                      *
              Appellees.              *
```

_____

Submitted:  May 13, 1998

Filed: July 31, 1998

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


This appeal arises out of the construction of a municipal waste composting facility in Pembroke Pines, Florida, by Reuter Recycling of Florida.  Buhler, Inc., which is owned by Buhler International, Ltd. (then known as Buhler Brothers, Inc.), provided equipment, design, and engineering services for the facility.  U.S. West Financial Services lent Reuter money to finance the facility.  Less than a year after the facility began operation, it was shut down by the state because of odor problems.  Reuter defaulted on its loan payments to U.S. West and assigned its legal rights to U.S. West.

U.S. West initiated arbitration against Buhler Inc. and Buhler International on fraud and negligence claims. It then alleged substantially the same claims in federal suits, against both Buhler parties in its capacity as lender, and against Buhler International in its capacity as Reuter's assignee. The District Court[1] stayed both actions pending the arbitration award. Ultimately, the arbitration panel awarded no damages to U.S. West. Buhler Inc. and Buhler International then moved to confirm the arbitrators' decision, and U.S. West moved to vacate or modify it as to Buhler International. The District Court confirmed the award as to both defendants. It dismissed U.S. West's assignee action on grounds of res judicata. In U.S. West's lender action, it granted summary judgment for Buhler Inc. and Buhler International.

On appeal, U.S. West challenges the dismissal of its assignee action against Buhler International and the dismissal of its lender action against both Buhler parties. We affirm.

I.

In 1990, Reuter and Buhler Inc. agreed that Buhler would design, engineer, and provide equipment for the Pembroke Pines facility's material separation and recovery system and composting process. The contract included a requirement that controversies arising from it be arbitrated. Later, U.S. West agreed to lend Reuter $48,545,000 to finance the facility. Soon after the facility was completed and began operation in October 1991, it developed odor problems and was cited and fined for violations of state odor regulations. U.S. West lent Reuter an additional $4,700,000 to address these problems. The facility had to close in November 1992.

---

[1]The Hon. David S. Doty, United States District Judge for the District of Minnesota.

When the plant's odor problems began, Reuter initiated arbitration against Encorp, the designer of the underground aeration system, for design and construction defects, and was awarded $2.5 million. In December 1994, Reuter initiated arbitration against Buhler Inc. and Buhler International. Buhler Inc. asked the District Court to stop the arbitration, on grounds that the claims should have been addressed in the Encorp litigation. The Court allowed the arbitration to proceed.

In 1995, Reuter defaulted on its loan and assigned its legal rights to U.S. West. In January 1996, U.S. West filed its own arbitration complaint against Buhler Inc. and Buhler International. It sought damages on theories of fraudulent and negligent misrepresentation, promissory estoppel, negligent design and professional malpractice, breach of contract, and unjust enrichment. As described below, the Buhler parties repeatedly contested Buhler International's party status.

Before the arbitration hearing, U.S. West filed two suits. First, with respect to the inducement of its loan to Reuter, it asserted against both Buhler parties claims of negligent misrepresentation, fraud, and promissory estoppel. Second, as assignee of Reuter's legal rights, and in response to Buhler International's resistance to inclusion in the arbitration, it alleged against Buhler International substantially the same claims that it had raised against both Buhler parties in its arbitration complaint.[2]

The arbitration hearing was held in November 1996 and lasted 17 days. At its conclusion, the panel decided: "Claimant is awarded no damages from Respondents on any of its claims." Appellant's Add. at 26. The caption of the award notice included both Buhler parties.

---

[2]Against both parties, U.S. West also alleged breach of a 1986 partnership agreement between Reuter and Buhler Inc. This claim is not now before us.

-4-

The Buhler parties moved for summary judgment in both federal actions, on grounds of res judicata and collateral estoppel. They also sought confirmation of the panel's decision in a state court, pursuant to 9 U.S.C. § 9 (1994) and Minn. Stat. Ann. § 572.18 (West 1988). U.S. West removed the confirmation action to federal court and sought to vacate or modify the award, as applied to Buhler International only, pursuant to 9 U.S.C. §§ 10 and 11 (1994). The District Court confirmed the award as to both Buhler parties. In the assignee action, it granted summary judgment in favor of Buhler International, on grounds of res judicata. In the lender action, it granted summary judgment in favor of both Buhler parties, on the ground that there were no material facts in dispute.

II.

U.S. West challenges the District Court's application of res judicata to its assignee action against Buhler International. It argues that Buhler International was not a party and, therefore, that the arbitration award was not a final decision on the merits of its claims against Buhler International. We affirm.

We assess the preclusive effect of the arbitration award on U.S. West's assignee action under Minnesota law. See Mandich v. Watters, 970 F.2d 462, 465 (8th Cir. 1992). Under Minnesota law, " '[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies . . ..' " Dorso Trailer Sales, Inc. v. American Body & Trailer, 482 N.W.2d 771, 774 (Minn. 1992) (quoting Mattsen v. Packman, 358 N.W.2d 48, 49 (Minn. 1984) (citations omitted)). The doctrine "should not be rigidly applied; rather, it focuses on whether its application results in an injustice against the party to be precluded." Sondel v. Northwest Airlines, 56 F.3d 934, 938 (8th Cir. 1995) (citing Houlihan v. Fimon, 454 N.W.2d 633, 635 (Minn. App. 1990)). A final arbitration award, unless it is set aside for a legally sufficient reason, has the same preclusive effect as a judgment.

The procedural history of the arbitration supports the District Court's finding that Buhler International was a party. U.S. West named Buhler International as a respondent in its arbitration complaint and attempted to serve the complaint on it. U.S. West never asked to dismiss Buhler International formally, and in fact opposed Buhler International's counsel's proposal to do so. As a formal matter, then, from the time that Buhler International was named as an arbitration party to the time when it was included in the arbitration award's caption, its party status never changed.

We recognize that the Buhler parties resisted the inclusion of Buhler International as a party to the arbitration. Buhler Inc.'s response to the arbitration complaint denied that Buhler International was a proper party to the arbitration, and Buhler International did not serve an answer itself. In February 1996, counsel for the Buhler parties moved the arbitration panel to dismiss Buhler International, though the panel did not do so. In a May 1996 letter, their counsel reiterated that Buhler International was not a party to the arbitration. When U.S. West brought its lender action against the Buhler parties, the Buhler parties did not argue that the claims against Buhler International had to be arbitrated, as they did regarding the claims against Buhler Inc.

However, we do not believe that these actions amounted to, or resulted in, the de facto dismissal of Buhler International from the arbitration proceedings. U.S. West still obtained extensive information from Buhler International, which the arbitration panel ordered to participate in discovery despite its objections. Buhler International produced approximately fifteen boxes of documents. In fact, the Buhler parties' counsel informed the arbitration panel that he had provided to U.S. West "all nonprivileged documents from both Buhler Inc. and Buhler International related to the Pembroke Pines Composting Facility . . .." Appellant's App. at 833. Additionally, U.S. West deposed Herman Hofer, the Buhler parties' expert in odor and "the Buhler International employee most directly involved in the design of the Facility . . .." Appellant's App. at 162 (aff. of Buhler counsel). Though, as U.S. West asserts, these

-6-

acts do not themselves render Buhler International a party, they do indicate that U.S. West did not lack access to information pertinent to Buhler International's liability.

Further, Buhler International's conduct and knowledge appear to have figured prominently in the arbitration hearing. It is true that, in its opening statement at the hearing, U.S. West counsel said, "we are not asking this panel for a determination of either liability or the amount of damages with respect to Buhler International LTD in this case." Appellant's App. at 193. However, this statement was immediately followed by a disclaimer: "Having said that, I will tell the panel that it's going to be difficult in this case to present the evidence without presenting evidence of the involvement of Buhler International LTD. I think the panel is going to hear a lot of evidence about where the original design for this composting system came from, who was involved and the people from [Buhler International]. So I believe there are some common factual backgrounds . . .." Id.

The record indicates that U.S. West did indeed present, and the arbitration panel considered, substantial evidence relevant to Buhler International's liability. U.S. West's arbitration brief alleged odor problems at "the 80 - 100 facilities [Buhler International] had designed and engineered." Appellant's App. at 215. Its opening statement alleged that Reuter had been lied to about odor problems at a Buhler plant in Germany and that "major odor problems" at other foreign plants had been concealed. Appellant's App. at 194-95. U.S. West's assignee action would have depended on proof of these same odor problems. The overlap of "common factual backgrounds" is especially significant in light of the fact that the alleged odor problems were in plants operated by Buhler International, and not its U.S. subsidiary Buhler Inc. As Buhler counsel explained in the memorandum supporting the Buhler parties' application to confirm the award, "only Buhler International supplied composting equipment to facilities outside the United States" and "only Buhler International had supplied equipment to approximately 80 - 100 composting facilities." Appellant's App. at 146, n.2. U.S. West does not deny these assertions.

U.S. West argues that, in the arbitration hearing, "U S WEST tried to show that Buhler USA asked others -- including Buhler Int'l., its parent corporation -- how to build and design such a plant and what problems had been previously faced and dealt with. This is entirely different than stating U S WEST offered the testimony of Buhler Int'l's employee as evidence that <u>Buhler Int'l</u> made false or misleading statements." Appellant's Reply Br. at 8. However, U.S. West's opening statement alleged that Herman Hofer, the Buhler parties' odor expert, had concealed evidence of odor problems during a test run of the Pembroke Pines facility. Appellant's App. at 194-95. Mr. Hofer was a Buhler International employee. Additionally, in U.S. West's answers to Buhler Inc.'s arbitration interrogatories, it alleged misrepresentations by other Buhler International employees. Appellant's App. at 200. U.S. West does not specify instances of alleged fraud, beyond those already explored in arbitration, that it would seek to prove in further litigation.

Because Buhler International technically remained a party throughout the arbitration, and because U.S. West presented substantial evidence relevant to Buhler International's liability during the hearing, the District Court's finding that Buhler International had been a party was not error. We believe that the arbitration panel considered U.S. West's claims against Buhler International on their merits fully, and we are not convinced that its use of the plural "respondents" in the award was inadvertent.

We find U.S. West's other arguments against res judicata unpersuasive. First, we reject its challenge that the award is ambiguous and should be remanded for clarification, because it did not raise this issue before the District Court. Further, it contends that Buhler International cannot benefit from the arbitration award because it did not sign the arbitration agreement, and because it was estopped by its resistance to inclusion in the arbitration. Noting the District Court's characterization of the litigation process on both sides -- "nobody is being real clear about what they want to

do because I think they also want to maintain the argument the other way," Appellant's App. at 512-13 -- we hold that these arguments are belied by U.S. West's own course of conduct in these proceedings.  See Twomey v. Durkee, 291 N.W.2d 696, 699 (Minn. 1980) ("Plaintiffs by acquiescing in and participating in the proceeding in effect represented . . . that the dispute was arbitrable, and that the parties would be bound by the decision and award . . ..").

We therefore hold that the District Court's application of res judicata did not result in "injustice."  Sondel, 56 F.3d at 938.  Rather, it properly acted "to relieve parties of the burden of relitigating issues already determined in a prior action . . .." Buetz v. A.O. Smith Harvestore Products, Inc., 431 N.W.2d 528, 531 (Minn. 1988).[3]

## III.

We also affirm the District Court's grant of summary judgment in U.S. West's lender action.  For evidence of a genuine issue of material fact, U.S. West relied on the deposition of Joseph Blankenship, U.S. West's project manager and loan officer:

Q.      In any event, did Buhler ever misrepresent anything to you or make any fraudulent statements to U S WEST that you are aware of?

A.      No, but if there were problems going on in some of the European facilities that Buhler was aware of, they didn't bring them up either.  What represents misrepresentation, is it omission?

---

[3]The motion of U.S. West to supplement the record is granted, but the supplemental materials presented do not change our view as to the conclusiveness of the arbitration award.

Q.  I will ask you about the omission. Did the Buhler folks ever, you think, fail to tell you something, did you ever ask them about any problems with any of their facilities, did they ever lie to you or misrepresent? Maybe your response was if there was a problem out there and they didn't tell you about it, that would be an omission that you might think of?

\* \* \*

A.  I do not believe and I have never felt that Buhler people either lied or in the same term [sic] purposefully misrepresented.

Q.  One of the things you just mentioned is you think if they knew about some problems in terms of odor, that if they are guilty of anything, they are guilty of the sin of omission, if you will, for failing to raise the issue?

A.  I think they probably knew more than they were telling.

Appellant's App. at 406-07. Blankenship's vague statements do not create a genuine issue of material fact as to the Buhler parties' knowledge and misstatement of odor problems, key elements of U.S. West's fraud claims. Summary judgment was therefore proper.

We also affirm the District Court's denial of U.S. West's post-judgment motions. U.S. West first filed a motion to reconsider, along with additional affidavits from Blankenship and another employee, which attested to fraudulent conduct by the Buhler parties. The District Court denied this motion: "[n]otwithstanding the procedurally defective nature of plaintiff's motion [failure to comply with the procedural requirement of obtaining "express permission" from the court to file such a motion, Local Rule 7.1(g)], the court has reviewed plaintiff's motion and determines that it has failed to make the requisite showing of compelling circumstances." Appellant's App. at 685

-10-

(Order at 2 (Sept. 16, 1997)).  U.S. West then resubmitted its motion as a Rule 59(e) motion to alter or amend the judgment.  The Court summarily denied this second motion.

U.S. West admits that the affidavits it wished to submit were available to it before the entry of judgment.  Appellant's Reply Br. at 21.  It was not an abuse of discretion for the Court to deny U.S. West's Rule 59(e) motion "to introduce new evidence that could have been introduced during pendency of the summary judgment motion . . .." Global Network Techs., Inc. v. Regional Airport Auth., 122 F.3d 661, 665-66 (8th Cir. 1997) (citation omitted).

We therefore affirm the judgment of the District Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.